This document was signed electronically on April 14, 2017, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: April 14, 2017



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re | Case No. 15-51397 |
| BRETT MATTHEW McCLAFFERTY, | Chapter 7 |
| Debtors. | Adversary Proceeding No. 16-5017 |
| BRETT MATTHEW McCLAFFERTY, | Judge Alan M. Koschik |
| Plaintiff, | |
| v. | |
| MICHAEL DeWINE, Ohio Attorney General, et al., | |
| Defendants. | |

### MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS

Now before the Court is the motion ("Motion") to dismiss the complaint ("Complaint") of Debtor-Plaintiff Brett Matthew McClafferty ("Debtor" or "Plaintiff") filed by Defendants

Michael DeWine and Rebecca Schlag, each in their capacities as Attorney General and Assistant Attorney General for the State of Ohio, respectively ("Defendants" or the "AG") on the alternative bases of lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, or failure to state a claim, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, incorporated into this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth herein, the Motion will be granted.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. The question of this Court's jurisdiction over this adversary proceeding is central to the pending Motion. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTUAL AND PROCEDURAL HISTORY

Because this matter is before the Court on a Rule 12 motion filed prior to a responsive pleading from the Defendants, the factual record is thin.

The AG filed a complaint against the Debtor and Mac Contracting, Inc., an Ohio corporation wholly owned by the Debtor, in the Summit County Court of Common Pleas on May 15, 2015, and amended that complaint on May 21, 2015. The AG filed the docket of that state court action, Summit C.P. Case No. CV-2015-05-2806, as an exhibit to the instant Motion in this Court. (Motion Ex. 1.) The AG did not obtain service of the complaint in that action on either defendant therein until considerably later, owing in part due to failures of certified mail service and in part due to the bankruptcy stay. The complaint was not an exhibit to the Motion.

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 8, 2015. On June 12, 2015, he filed a suggestion of stay in the state court action. On June 30, 2015, the state court stayed the proceedings and transferred the state court action to its inactive docket.

The AG did not seek relief from the automatic stay in this Court pursuant to 11 U.S.C. § 362(d). Instead, on July 15, 2015, the AG filed a motion for reconsideration of the state court's June 30, 2015 decision to stay that proceeding. A copy of that motion for reconsideration is attached to the Motion. (Motion Ex. 2.) In the motion for reconsideration presented to the state court, the AG argued that (a) the stay did not apply to Mac Contracting because Mac Contracting was a separate entity from the Debtor and had not filed for bankruptcy itself, and (b) the action against the Debtor was not stayed because the Bankruptcy Code provides that the filing of a bankruptcy case does not stay actions by governmental units to enforce the police and regulatory powers of such governmental units. Neither the Debtor nor Mac Contracting filed a response. On July 31, 2015, the state court granted the AG's motion and returned that case to the active docket. It is not clear from the state court docket whether the state court entered a written opinion supporting this decision. However, if such a written exposition exists, it was not filed with this Court in support of the Motion.

On September 14, 2015, the AG moved for default judgment, and the state court ultimately entered a default judgment on December 10, 2015. The AG has not submitted a copy of the default judgment to the Court in support of the Motion, if indeed such an order exists in addition to the text reflected in the state court docket. A motion to vacate that default judgment was filed on December 18, 2015; it is unclear whether this motion was made by Mac Contracting

or by both the Debtor and Mac Contracting. The state court denied the motion to vacate on February 22, 2016.

The Debtor commenced this adversary proceeding on March 1, 2016. The Debtor's complaint alleges that the continuation of case CV-2015-05-2806 against him in the state court violated the automatic stay of the Bankruptcy Code, that "Defendants sought monetary damages, penalties, fines, and other monies," and "the default judgment [in the state court proceeding], although not yet determined, is expected to exceed one hundred thousand dollars ($100,000.00)." (Complaint at 2.)

On March 31, 2016, the AG filed the instant Motion in lieu of an answer. The AG argues that this Court lacks jurisdiction to overturn the ruling of the state court that the automatic stay did not apply to the state court case, based on the *Rooker-Feldman* doctrine. The AG argues further—in the alternative, though the AG does not expressly characterize it as such—that the legal reasoning of the state court was correct and that the automatic stay does not apply to the state court case, because that action was an exercise of the police and regulatory powers of the State of Ohio through its attorney general to enforce its consumer protection laws. The AG describes the complaint as "seeking, *inter alia*, a permanent injunction ordering [the Debtor and Mac Contracting] to cease their unfair and deceptive practices against Ohio consumers." (Motion at 2.)

The Debtor filed his response to the Motion on April 19, 2016 (Docket No. 6) (the "Response"). The Debtor argues that "the state case in question was a civil case in which the Ohio Attorney General was acting as *de facto* counsel for a number of homeowners in a *de facto* class action lawsuit, alleging violations of the Consumer Sales Protection Act [sic],[1]" and sought

---

[1] Actually the Ohio Consumer Sales Practices Act.

4

16-05017-amk    Doc 13    FILED 04/14/17    ENTERED 04/14/17 16:54:01    Page 4 of 13

"monetary damages, punitive damages, and penalties." (Response at 4.) The Debtor argues that on that basis that the state court action is not an exercise of the police and regulatory power that would be excepted from the stay.

The AG filed his reply in support of the Motion on May 20, 2016 (Docket No. 11) (the "Reply"). In its reply, the AG highlights the distinction between modifying the automatic stay and determining that the stay is inapplicable, arguing again that non-bankruptcy courts may do the latter and that such decisions, if made by a state court, are not subject to bankruptcy court review pursuant to the *Rooker-Feldman* doctrine. The AG's reply also reiterated, on the merits, that the stay did not apply because the state court action was brought pursuant to the police and regulatory powers of the State of Ohio, and on that basis, the complaint should be dismissed for failure to state a claim. The Court then took the matter under advisement.

**LEGAL ANALYSIS**

**A.      Standard for Motions to Dismiss Under Civil Rules 12(b)(6) and 12(b)(1)**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.E.2d. 868 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S.C. 544, 570, 127 S.Ct. 1955 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." *In re City of Detroit, Mich.*, 841 F.3d 684, 699 (6th Cir. 2016) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). "On the other hand, when considering a Rule 12(b)(6) motion to dismiss, the trial court must 'construe the complaint in the light most

favorable to the plaintiff and accept all factual allegations as true.'" *Adkisson v. Jacobs Engineering Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (quoting *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014)).

Rule 12(b)(1) motions challenging the subject-matter jurisdiction of a federal court generally come in two varieties: a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard to the one employed in adjudicating Rule 12(b)(6) motions to dismiss. *Id.* However, when there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations. When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Id.*

**B.    The *Rooker-Feldman* Doctrine Does Not Preclude the Bankruptcy Court's Review of the Applicability of the Bankruptcy Code's Automatic Stay Notwithstanding the Concurrent Jurisdiction of Nonbankruptcy Courts to Consider the Same Issue.**

As a threshold matter, the Court must consider the Defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), on the basis of the *Rooker-Feldman* doctrine. That doctrine emerged out of two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine "is confined to … cases brought by

6

16-05017-amk    Doc 13    FILED 04/14/17    ENTERED 04/14/17 16:54:01    Page 6 of 13

state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (reversing Third Circuit's holding that federal jurisdiction terminated when state court with concurrent jurisdiction entered judgment on claims involving the same royalty dispute between the parties). Thus, the *Rooker-Feldman* doctrine does not prohibit all federal cases that are somehow related to a prior state-court decision. *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 372 (6th Cir. 2008). "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *Exxon Mobil* at 293).

When a party disputes that the automatic stay applies to a proceeding in a nonbankruptcy forum, because of the possible application of an exception to the stay such as those enumerated under 11 U.S.C. § 362(b), the Sixth Circuit has held, following the Second Circuit, that …

> The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.

*N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986) (quoting *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985)). More specifically with respect to the case before the Court, "a governmental unit which determines that its police power regulatory proceeding is excepted from the automatic stay under § 362(b)(4) is not required to petition the bankruptcy court for relief from the automatic stay prior to continuing its proceeding." *Edward Cooper Painting,* 804 F.2d at 939. However, in the same opinion, the Sixth Circuit noted that while nonbankruptcy courts may independently determine whether the automatic stay applies and proceed when they determine it does not, that comes with a major

7

practical caveat: Succinctly put, they "proceed[] at their own risk." *Id.* at 940. "If it was later determined that the proceeding was *not* excepted from the automatic stay, the entire [nonbankruptcy] proceeding would be void *ab initio* as an act taken in violation of the stay." *Id.* (emphasis in original).

In such an instance, the *Rooker-Feldman* doctrine cannot apply: An act that is void *ab initio* is "null from the beginning." Black's Law Dictionary 1805 (10th ed. 2014). Therefore, the prohibition against federal courts inferior to the Supreme Court reviewing final judgments of a state court cannot apply; not only is there no final judgment of a state court, but in the eyes of the law, there is no state court judgment at all:

> It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.

*Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940) (citations omitted).[2] "Thus, the *Rooker-Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy …. In fact, a reverse *Rooker-Feldman* situation is presented when

---

[2] The Sixth Circuit in *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905 (6th Cir. 1993), argues that *Kalb* was abrogated by the introduction of the Bankruptcy Code in 1978 and that, under the Bankruptcy Code, acts in violation of the automatic stay are merely "invalid and voidable and shall be voided absent limited equitable circumstances," not void *ab initio*. *Id.* at 911. *Easley* was not decided *en banc*, did not discuss *Edward Cooper Painting* at all, and apparently conflicts with the statement of the *Edward Cooper Painting* court, which was decided after the introduction of the Bankruptcy Code but prior to the *Easley* decision, holding that acts in violation of the automatic stay remained void *ab initio* even after 1978. *Easley* also did not deal with any argument presented on the *Rooker-Feldman* doctrine.

Considering the strong parallels between *Edward Cooper Painting* and the case at bar, and that *Easley* dealt with neither a purported exception to the automatic stay under 11 U.S.C. § 362(b) nor any invocation of the *Rooker-Feldman* doctrine, *Easley* does not militate against this Court's holding here. When a nonbankruptcy court proceeds with a purported police or regulatory enforcement action in violation of the stay, *Easley* would simply have a bankruptcy court affirmatively void the offending action rather than simply declare that it never existed; it would not argue in favor of allowing a proceeding that should have been stayed to stand and effectively modify the bankruptcy stay.

8

state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction." *Grutz v. City of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir. 2007). Therefore, the AG's motion to dismiss for lack of subject-matter jurisdiction, pursuant to Civil Rule 12(b)(1) must be denied.

**C. The Ohio Attorney General Did Not Violate the Automatic Stay By Pursuing Judgment Under the OCSPA, and Does Not Violate the Automatic Stay in Enforcing the Nonmonetary Elements of Such Judgment.**

Therefore, this Court must and does reach the question of whether the state court proceeding seeking and enforcing a judgment against the Debtor for a violation of the OCSPA was excepted from the automatic stay by operation of 11 U.S.C. § 362(b)(4).

At the outset, the Court was considerably hampered in its analysis of whether the AG's complaint is excepted from the automatic stay by the fact that no party has placed the state court complaint into evidence here, or even made it part of their allegations in their pleadings. The Court was limited to summary descriptions in the parties' competing briefs of the nature of the state court action. However, the Sixth Circuit's guidance on this topic is fortunately broad and categorical enough that even the imperfect information available to the Court at this juncture is sufficient to allow the Court to rule on the merits here.

> The filing of a petition in bankruptcy does not operate as a stay …
>
> of the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4).

Citing the legislative history of the Bankruptcy Act of 1978, the Sixth Circuit held:

> where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, *consumer protection*, safety, or similar police or

regulatory laws, *or attempting to fix damages for violation of such a law*, the
action or proceeding is not stayed under the automatic stay.

*Edward Cooper Painting,* 804 F.2d at 941 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6299) (emphasis added).[3]

To determine whether an action qualifies as a proceeding pursuant to a governmental unit's police or regulatory power, and therefore falls outside the ambit of the automatic stay, courts in the Sixth Circuit apply two tests: the pecuniary purpose test and the public policy test. *Chao v. Hospital Staffing Servs., Inc.*, 270 F.3d 374, 385 (6th Cir. 2001).

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Id.* at 385–86 (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988)). The inquiry of the pecuniary interest test has also been phrased as "whether the specific acts the government wishes to carry out … would result in an economic advantage for the government or its citizens over third parties in relation to the debtor's estate." *In re Commonwealth Companies*, 913 F.2d 518, 523 (8th Cir. 1990); *see also Hospital Staffing Servs.* at 386. Pursuant to these complementary tests, an action will only be exempt from the automatic stay of the Bankruptcy

---

[3] At the time of the Sixth Circuit's *Edward Cooper Painting* decision, there were two separate, consecutively enumerated exceptions to the automatic stay dealing with governmental police and regulatory powers. 11 U.S.C. § 362(b)(4) then provided that Section 362(a) did not stay "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." Next, 11 U.S.C. § 362(b)(5) provided that Section 362(a)(2) did not stay "the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(5) (repealed 1998). However, at the same time it was repealed, Section 362(b)(5)'s language regarding the enforcement of nonmonetary judgments was moved into 11 U.S.C. § 362(b)(4), as quoted above, where it remains today. Therefore, the remainder of the Sixth Circuit's discussion in *Edward Cooper Painting* regarding which police and regulatory actions may proceed notwithstanding the automatic stay has not been disturbed.

10

Code if the action has been instituted to effectuate the public policy goals of the governmental entity, as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights." *Hospital Staffing* at 386.

Because of the Rule 12(b)(6) standard of review and the fact that neither party submitted a copy of the state court complaint or default judgment in support of their argument, the Court must assume that Debtor is correct that that "the Ohio Attorney General was acting as *de facto* counsel for a number of homeowners in a *de facto* class action lawsuit, alleging violations of the Ohio Consumer Sales [Practices] Act … [seeking] monetary damages, punitive damages, and penalties." (Pl.'s Br. at 4.) This is the Debtor's strongest argument, as it at least raises the possibility that this particular action is intended to adjudicate private rights, including rights that would be remedied by monetary recovery. "The existence of the public policy test naturally presumes that some suits by government units, even though they would effectuate certain declared public policies, will nevertheless be regarded as largely in furtherance of private interests." *Hospital Staffing* at 389.

> Accordingly, courts should examine the type of enforcement action brought and the relationship between a particular suit and Congress's (or a state's) declared public policy. When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within "such governmental unit's police and regulatory power," as that term is used in § 362(b)(4). However, when the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities.

*Id.* at 390.

However, even when an action was brought to obtain a permanent injunction, civil penalties, attorneys' fees, investigative costs, and consumer restitution under the OSCPA, such

11

actions have still been held to pass the pecuniary purpose and public policy tests, and therefore be deemed excepted from the automatic stay. *In re Hughes*, 87 B.R. 49 (Bankr. S.D. Ohio 1988). In *Hughes*, the State of Ohio sought all of those forms of relief against a debtor alleged to have tampered with vehicle odometers. The court held that while "the State of Ohio's law suit would benefit specific individuals, it also acts to vindicate the public interest …. The state is not functioning simply as a vehicle for conducting litigation on behalf of private parties." *Id.* at 52.

The Court finds similarly here. The Debtor has not disputed that the state's action sought a permanent injunction against the Debtor and his company based on alleged unfair and deceptive practices against Ohio consumers; the Debtor counters only that the state *also* seeks monetary relief. However, that alone will not stay the action without some showing, pursuant to *Hospital Staffing*, that the action will only incidentally serve the public interest in preventing unfair and deceptive trade practices and will primarily advantage either the state's own financial recovery or the financial recovery of other parties whose rights the state seeks to vindicate, to the detriment of other creditors of the estate. The latter concern is of little relevance here because of the automatic stay remains in effect to bar enforcement of any money judgment against the Debtor personally. Indeed, if the damages and penalties are owed jointly and severally by the Debtor and his company and the state were somehow successful at collecting the damages from the Debtor's company instead of the Debtor personally, such recovery would *reduce* the claims against the estate and actually advantage the estate's other creditors.

"[O]nce proceedings are excepted from the stay by section 362(b)(4), courts have allowed governmental units to fix the amount of penalties, up to and including the *entry* of a money judgment." *Edward Cooper Painting* at 942-43 (emphasis in original); *see also Hughes* at 52. Only attempts to enforce such a money judgment outside of the bankruptcy court would

be stayed. *Hughes* at 52. However, as discussed above, the Complaint not only fails to allege any such attempt at enforcement, but affirmatively states that the amount of the default judgment is not yet even determined.

## CONCLUSION

For the reasons set forth above, the *Rooker-Feldman* doctrine does not apply to the state court's finding that the automatic stay did not apply and, therefore, the Defendant's Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Civil Rule 12(b)(1) must be denied.

However, the Court concludes on the merits that the Defendants have thus far only taken actions that are excepted from the automatic stay by operation of 11 U.S.C. § 362(b)(4), and that exception to the automatic stay further allows the Defendants to proceed to fix the value of the damages owed for the conduct of the Debtor and his company in that proceeding. While it might have been advisable to come to this Court first to confirm the exception from the automatic stay before proceeding, the Defendants were not obligated to do so. Furthermore, to the extent that the default judgment is nonmonetary, it may be enforced notwithstanding the automatic stay against both the Debtor and his company; to the extent that it is monetary, it may not be enforced against the Debtor personally.

Because there was no violation of the automatic stay at all, there was no willful violation giving rise to a claim for damages pursuant to 11 U.S.C. § 362(k). Therefore, the Motion to Dismiss for failure to state a claim pursuant to Civil Rule 12(b)(6) will be granted.

The Court will enter a separate order granting the Defendant's Motion to Dismiss consistent with this Memorandum Decision. The Court's Order granting the Motion to Dismiss will not be deemed entered until the separate order has been docketed by the Clerk.

# # #